## MATTER OF EAST SYRACUSE.

### *N. Y. Supreme Court, Fifth District, Special Term; November, 1887.*

1. *Villages; unlawful or corrupt expenditures of officers; summary investigation.*] Under L. 1879, c. 307,—providing for the summary investigation of unlawful and corrupt expenditures by village officers,—a justice has no power to investigate or to correct evils resulting from mere error in judgment and foolish expenditures of public moneys by such officers, but only where there has been either an unlawful or corrupt expenditure thereof.

2. *The same; what constitutes an unlawful expenditure.*] The expenditure of public moneys of a village is not to be deemed unlawful, within the statute, because of a want of skill and judgment which results in a waste of moneys in the prosecution of a public work,—as in the construction of a gutter, and an alteration of the original plan, so that it results in but little benefit to the village, and costs more than it should if the work had been done in a proper manner, and more than it was worth in the way in which it was finally completed.

3. *The same.*] Nor is the act of the village trustees in placing gravel upon the public highway outside of the corporate limits of the village, so as to render it more passable and enable the teams employed by the authorities to draw larger loads of gravel from a pit belonging to the village to which the highway extended, to be deemed an unlawful expenditure.

4. *The same.*] Nor is the act of the trustees in causing the hay and weeds growing upon the sides of the streets in the village to be cut and drawn away at the public expense twice during the summer, to be deemed an unlawful expenditure, as L. 1878, c. 49, expressly requires weeds, etc., to be cut, in case the abutting owner fails to do so after written notice.

5. *The same.*] Nor is the charge of unlawful expenditure sustained by proof of the employment by the officers in work upon the streets of men who, either from advanced age could not, or from lack of inclination would not, do a full day's work for a full day's pay, where this is not done intentionally and as a matter of favoritism, but

where such men have imposed upon the authorities and taken advantage of their temporary absence, while the work was being done, to idle away their time.

Investigation ordered pursuant to L. 1879, c. 307, upon the application of Samuel Wills and thirty-six other freeholders of the village of East Syracuse.

The material facts appear in the opinion.

*T. E. Hancock* and *H. Hoyt*, for the petitioners.

*T. K. Fuller,* for the respondents.

VANN, J.—This matter arises under a statute passed in 1879 (c. 307), entitled, "An act to provide for the summary investigation of unlawful and corrupt expenditures by officers of towns, or incorporated villages, and for restraining the same" (1 *R. S.* [7 ed.] 863). This statute provides in substance that if twenty-five freeholders of a town or incorporated village shall present to a justice of the supreme court an affidavit setting forth, among other things, that they have cause to believe that the moneys of such town or village "are being unlawfully or corruptly expended," it shall be the duty of such justice to make a summary investigation into the financial affairs of such town or village. Provision is made for notice to the officers who have control of the expenditures in question, and requiring them to obey all orders of the justice directed to them for facilitating the investigation.

Said justice, if satisfied that any of the moneys of such town or incorporated village are being unlawfully or corruptly expended, or appropriated to purposes to which they are not properly applicable, or are improvidently squandered or wasted, is required to grant an order restraining such unlawful, corrupt or improvident expenditure. The costs incurred in such investigation, when taxed by said justice, are required to be paid by the

" supervisor or supervisors, or trustees, as the case may be," whose expenditures are the subject of the investigation, when the facts charged in said affidavit shall be substantially proved, and by the freeholders making the affidavit when the facts charged therein shall not be proved.

The affidavit by which this proceeding was initiated contains no specific charge against the officers of the village, but simply the general allegation on the part of the petitioners that they have cause to believe that the moneys of the village have been unlawfully and corruptly expended. What the cause of this belief on the part of the petitioners was, or what moneys were thus expended, or when or for what purpose, is nowhere alleged. The general and indefinite nature of the charge has been an embarrassment throughout the investigation, and has prevented an orderly, logical and systematic examination.

No evidence has been given tending to show any corruption upon the part of any officer whose conduct has been inquired into. No proof has been furnished that any money belonging to the village has been corruptly expended, or that any officer who is a party to these proceedings sought to make money out of his official position or in any way acted dishonestly or from evil motives in transacting the business of the village. The evidence compels the conclusion that the president, treasurer and trustees, who are the only officers that can be made parties to such an investigation, used their best judgment and acted in good faith in the discharge of their official duties. Some of their methods of doing business may deserve criticism as loose, informal and unbusiness-like. They may have seriously erred in judgment and have made a foolish expenditure of public moneys. They may have misused the large discretionary powers with which they are clothed by law. But these evils are foreign to an investigation of this character, and must be corrected, unless under extraordinary circumstances, such as are not

shown to exist in this case, otherwise than by an appeal to judicial tribunals. Unless the evils complained of result in the unlawful or corrupt expenditure of money belonging to the village, the statute gives the justice conducting the proceeding no power either to investigate or to correct them.

As it is not now claimed that any corruption existed, the remaining inquiry must be confined to any unlawful expenditure of money on the part of the officers of the village.

The point upon which the petitioners apparently place their main reliance relates to a gutter on the south side of Manlius street, which it is claimed that the trustees caused to be dug and the earth removed therefrom, and then caused the gutter to be substantially filled up again with gravel. The petitioners further claim that $150 was thus expended with no good result, and that said sum was largely in excess of what the work should have cost.

It appears from the evidence that Manlius street extends through the village on an east and west line, and that on the south side thereof is situated a store belonging to Mr. Wills, one of the petitioners. On the north side of Manlius street, and directly opposite said store, is Silver street, extending northerly from Manlius street and at right angles thereto. The first floor of this store is lower than the street, and is on a level with the sidewalk in front. During the Spring rains or any heavy rain storm the water has been in the habit of running down Silver street and across Manlius street into Mr. Wills's store, to his serious inconvenience. The highest grade on Manlius street is near said store, so that the natural flow of the water is both to the east and west from this point. The trustees sought to carry off the water from Silver street, and at the same time to properly drain Manlius street, by digging a gutter 872 feet long on the south side of Manlius street from Charles street, which is one block west of Mr. Wills's store, to Division street, which is about

one block east of said store. The grade of the gutter as thus projected was fixed by a skillful engineer, who gave it as his opinion that the improvement as thus planned was a proper one, and this is confirmed by a preponderance of evidence. In doing the work, however, there was a failure to conform to the grade, as the gutter was dug too deep in places, which would cause the water to collect and make a mud-hole. To remedy this evil, cobble-stones were placed in the deepest parts, and covered over with gravel, but the work did not prove satisfactory to some of the citizens for whose benefit it was mainly intended, and owing to their complaints the original plan as laid out by the engineer was substantially abandoned and the water permitted to flow both to the east and west, as it did in the first place. While the money thus expended has not been wholly lost to the village, it has resulted in comparatively little benefit.

The digging of this gutter cost more than it was worth to do the work in a proper manner, and more than it was worth to do it in the way that it was done. This, however, was owing to a lack of skill and judgment rather than to any wrong intention. The men who did the work were entitled to their pay, and they received no more than they were entitled to. There was no unlawful expenditure of money, but, in my judgment, there was an injudicious and foolish expenditure. The matter appears to have been mismanaged, and it cost something to correct the mistake: but there is nothing in this, or in any circumstance surrounding the transaction, not here detailed, that authorizes interference by the courts. Some one must have the power of deciding what public improvements are to be made, how they are to be made, when they are to be changed, and even when they are to be changed back again. That power in this case was vested in the trustees of the village, elected by the people. I cannot substitute my judgment for that of the trustees, whom the law has clothed with a large discretionary power in projecting,

executing and altering public works. The courts cannot superintend the construction of public improvements nor review the action of those officers who are authorized to construct them, provided their conduct is not unlawful or corrupt. Want of skill and errors of judgment on the part of public officers are not to be corrected by judges but by electors.

It appeared upon the investigation that a quantity of gravel was placed upon a public highway outside of the corporate limits of the village, and this is criticised as unauthorized and unlawful. It further appeared, however, that this highway extended to a gravel-bed belonging to the village, and about one mile distant therefrom. The gravel was so placed in order to mend the road and make it more passable, and thus to enable the teams employed by the village authorities to draw larger loads of gravel and more of them in the same length of time. The trifling amount of money thus spent was a direct benefit to the corporation, and was clearly within the sound discretion of the trustees.

It also appeared that twice during the last summer the trustees caused the hay and weeds growing upon the sides of the streets in the village to be cut and drawn away at the public expense. It is claimed that this was an unlawful expenditure of money, as the statute requires all noxious weeds, briars and brush growing upon any cultivated or enclosed lands abutting upon any highway to be cut or destroyed twice during each year by the persons owning or leasing such lands (L. 1878, c. 49, p. 55). This statute was amended in 1886 by making it the duty of the overseer of every road district, and of the street commissioner of every city or village, to employ some one to cut all weeds, briars and brush growing within the bounds of the highway; provided "the occupant of the premises" should fail to do so within a specified time after written notice (L. 1886, c. 291, 468). Although the burden of proof was upon the petitioners,

Matter of East Syracuse.

they failed to show under what circumstances the street commissioners caused the grass and weeds in question to be cut, or whether it was with or without notice to the occupants of abutting premises. Hence it does not appear whether the acts of the street commissioners in this respect were lawful or unlawful, except that the law presumes that they were lawful in the absence of proof to the contrary.

The only other charge that I am able to formulate from the evidence is that men were employed upon the streets who either from advanced age could not, or from lack of inclination would not, do a full day's work for a full day's pay. Such charges are not unknown in the history of other municipal corporations. If the corporate authorities of a village intentionally and as a matter of favoritism hire infirm men or indolent men, and pay them full wages when they know that they do not earn full wages, it is such a waste of the public funds as may permit interference by the courts under the statute pursuant to which this investigation has been conducted. But it is one thing to knowingly continue such men in employment, and quite another to be imposed upon by them when absent. Evidence was given tending to show that during the last summer four men and a team spent an entire day in laying a single crosswalk, with approaches and sluiceways, and doing the necessary grading; that this was much more time than the work required, and that the men employed were seen to idle away their time. But it does not appear that the trustees knew of this, or that they were responsible for it, and the street commissioner, under whose direction the work was done, testified that no more time was spent upon it than was actually required, owing to peculiar difficulties. He also testified that the men worked well when he was present, but that a part of the time he was absent on other official duties. It is quite possible that his absence was taken advantage

of, but it is difficult to see how it could have been prevented. The only other reliable evidence bearing upon this point is, that two or three men from sixty to seventy years old were employed for several days in mowing weeds and grass. Other evidence showed that these men, although advanced in years, were able to do a full day's work at light mowing, which does not require great strength or activity, and that they fairly earned the money that was paid them.

In my opinion, the petitioners have failed to establish such a case against the village officers as the statute requires, and their proceedings are, therefore, dismissed, with costs.